UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLAN DOUGLAS ANDREWS, JR., | : | CIVIL NO: 1:20-CV-01878 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, *Acting* | : | |
| *Commissioner of Social Security*,[1] | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION**

## I. Introduction.

This is a social security action brought under 42 U.S.C. § 405(g).  The

plaintiff, Allen Douglas Andrews, Jr. ("Andrews"), seeks judicial review of the

final decision of the Commissioner of Social Security ("Commissioner") denying

his claim for disability insurance benefits under Title II of the Social Security Act.

We have jurisdiction under 42 U.S.C. § 405(g).  For the reasons set forth below,

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

the Commissioner's decision will be vacated, and judgment will be entered in favor of Andrews.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 14-1 to 14-12*.[2]  On March 30, 2018, Andrews protectively filed[3] an application for disability insurance benefits. *Admin. Tr.* at 72, 174.  After the Commissioner denied his claim at the initial level of administrative review, Andrews requested an administrative hearing. *Id.* at 89–92.  And on October 3, 2019, Andrews, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Randy Riley. *Id.* at 33–48.

The ALJ determined that Andrews had not been disabled from December 6, 2017 (the alleged onset date), through December 6, 2019 (the date of the decision). *Id.* at 23–24.  And so, he denied Andrews benefits. *Id.*  Andrews appealed the ALJ's decision to the Appeals Council, which denied his request for review on

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Andrews's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*  Here, Andrews's application for disability insurance benefits is dated March 30, 2018. *See Admin. Tr.* at 72.

August 20, 2020. *Id*. at 1–6.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On October 13, 2020, Andrews, through counsel, began this action by filing a complaint claiming that the Commissioner's decision is not in accordance with the law and is not supported by substantial evidence. *Doc. 1* ¶ 8.  He requests that the court remand the case to the Commissioner for further proceedings, award attorney's fees, and grant him other relief that may be justified. *Id*. at 2 (Wherefore Clause).

After the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned, *doc. 12*, the Commissioner filed an answer and a certified transcript of the administrative proceedings, *docs. 13*, *14*.  The parties then filed briefs, *see docs. 19, 22, 23*, and this matter is ripe for decision.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether

substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Andrews was disabled, but whether substantial evidence supports the Commissioner's finding

that he was not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title II of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a).  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe

---

referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Andrews met the insured-status requirements through December 31, 2022. *Admin. Tr.* at 17.

impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

7

**IV.  The ALJ's Decision.**

On December 6, 2019, the ALJ denied Andrews's claim for benefits. *Admin. Tr.* at 15–24.  At step one of the sequential-evaluation process, the ALJ found that Andrews had not engaged in substantial gainful activity since December 6, 2017, his alleged onset date. *Id.* at 17.

At step two of the sequential-evaluation process, the ALJ found that Andrews had the following severe impairments: back disorder and obesity. *Id.* at 18.  The ALJ also noted that Andrews was diagnosed with metacarpal base fracture and carpal tunnel syndrome, but he stated that treatment notes indicate that the conditions have "resolved to the point that claimant exhibited normal arm strength and tone, even though he did not undergo corrective surgery." *Id.* (citations to the record omitted).  And because the conditions did not cause significant limitations for twelve months, the ALJ found them non-severe. *Id.*  He also mentioned that Andrews's "medically determinable mental impairment of alcohol abuse is in remission, and does not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore nonsevere." *Id.* (citation to the record omitted).

At step three of the sequential-evaluation process, the ALJ found that Andrews did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1. *Id.* at 19.  More specifically, the ALJ discussed Listing 1.04, and he determined that Andrews did not meet that listing. *Id.*  In connection with his discussion of the listings, the ALJ concluded that Andrews has "not exhibited the motor, sensory, or reflex loss described in listing 1.04, and his obesity did not prevent him from performing activities of daily living." *Id.* (citations to the record omitted).

The ALJ then determined that Andrews has the RFC to perform light work[5] with some limitations. *Id.* at 19–22.  He is limited to standing or walking six hours total in an eight-hour workday. *Id.* at 19.

In making this RFC assessment, the ALJ reviewed Andrews's assertions and testimony regarding his impairments and limitations.  He noted that Andrews claims "that back injury and sciatica limited his ability to work" and "caused difficulty with lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, and completing tasks." *Id.* (citations to the record omitted).  Andrews testified that "he could walk 100 feet before experiencing shooting leg pain, stand

---

[5] *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

for 20 seconds before experiencing pain, and sit up straight for 10 seconds before needing to lie down or stand up." *Id.* at 19–20.  The ALJ also noted that Andrews testified to using a cane a couple of times per week and that his pain sometimes impacts his ability to concentrate. *Id.* at 20.  Although the ALJ determined that Andrews's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he concluded that Andrews's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

And the ALJ observed that Andrews's statements "about the intensity, persistence, and limiting effects of his symptoms" are not consistent with his daily activities because he can feed his pets, reheat leftovers, manage his finances, watch television, spend time with others, follow instructions, shower and get dressed independently, exercise, squat, and go upstairs with a railing. *Id.* (citations to the record omitted).  The ALJ reported that those activities are not consistent with Andrews's assertion that he could walk for only "100 feet, sit up right for 10 seconds, and stand for 20 minutes." *Id.*[6]

---

[6] Earlier in his report, the ALJ stated that Andrews testified that he could stand for only 20 *seconds* before experiencing pain.  Here, the ALJ mistakenly stated that Andrews testified that he could stand for 20 *minutes* before experiencing pain.  The transcript indicates that Andrews testified that he could stand for 20 seconds before experiencing pain. *Admin. Tr.* at 38.

The ALJ also reviewed Andrews's treatment records.  In this regard, the

ALJ stated that "approximately 3 years prior to the alleged onset date, December 6,

2017, [Andrews] was assessed with recurrent L5-S1 disc herniation, and

underwent a redo of left L5-S1 discectomy." *Id.* (citations to the record omitted).

But "[t]he day after the alleged onset date, he exhibited normal gait, and was able

to ambulate without an assistive device." *Id.* (citations to the record omitted).  The

ALJ also noted that Andrews did not require pain medication, was exercising, and

"exhibited full strength and full range of motion of the neck and all 4 extremities."

*Id.* (citations to the record omitted).

The ALJ then considered the findings of the consultative examiner, Ahmed

Kneifati, M.D.  Dr. Kneifati examined Andrews on July 2, 2018. *Id.*  He noted that

Andrews used a cane, but "was able to walk with the cane and without it." *Id.*  He

also reported that Andrews did not need help getting on or off the exam table. *Id.*

The ALJ summarized Dr. Kneifati's report that Andrews:

> [E]xhibited positive straight leg raise testing, L4-L5 tenderness, and
> hypoesthesia of the lateral leg and dorsum left foot, but no trigger
> points, full strength, and no muscle atrophy.  Further, lumbar x-ray
> showed no acute bony abnormality.  He was assessed with lumbar
> spine pain down the left leg with numbness and multiple back
> surgeries.

*Id.* (citations to the record omitted).

The ALJ then cited to numerous other difficulties Andrews experienced,

including the absence of "ankle jerk reflexes and deranged sensation to light touch

in the lower extremity, but normal gait." *Id.* (citations to the record omitted).  And he also considered that Andrews "was able to use a 4-wheeler, and indicated his lower back pain improved with leaning forward and lying flat." *Id.* at 21 (citations to the record omitted).  The ALJ stated that by April 2019, Andrews's BMI was 32.3, he exhibited normal gait, and his upper and lower extremity strength was intact and symmetrical. *Id.* (citations to the record omitted).  After evaluating the evidence, the ALJ found that Andrews's "impairments limited him to a reduced range of light work, but did not persist at disabling levels." *Id.*

The ALJ also considered the medical opinions in regard to Andrews's alleged disability.  He first considered the opinion of Robert Lyons, M.D.  Dr. Lyons suggested that Andrews could not work for two weeks, but after two weeks, he could "return to full unrestricted activity." *Id.* (citations to the record omitted). The ALJ did not find Dr. Lyons's opinion persuasive, because "it describes temporary limitations, and is not supported by more recent evidence, including the Medical expert opinion, which shows the claimant has at least some additional limitations on working." *Id.*

The ALJ then considered the opinion of Dr. Kneifati, the consultative examiner, who opined that Andrews had several functional limitations. *Id.*  The ALJ found Dr. Kneifati's opinion "not fully persuasive" because it was unsupported by and inconsistent with the record evidence. *Id.*

12

The ALJ next considered the opinion of Marlon Ming, DPT, who suggested that Andrews could not work and had severe functional limitations. *Id.* The ALJ found Dr. Ming's opinion to be unpersuasive because it was unsupported by and inconsistent with the record evidence. *Id.* at 21–22.

The ALJ also considered the opinions of the State agency consultants, who reported that Andrews had no medically determinable impairments. *Id.* at 22. The ALJ found their opinions not persuasive since they were inconsistent with treatment notes and not supported by the medical expert's opinion. *Id.*

Finally, the ALJ considered the opinion of the medical expert, James Todd, M.D. Dr. Todd opined that Andrews "could perform light work and walk/stand 6 out of 8 hours per day." *Id.* The ALJ determined that Dr. Todd's finding was persuasive because it was supported and consistent with the record as a whole. *Id.*

At step four of the sequential-evaluation process, the ALJ found that Andrews is unable to do his past relevant work as a maintenance technician. *Id.*

At step five of the sequential-evaluation process, considering Andrews's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as garment sorter, information clerk, and checker—that exist in significant numbers in the national economy that Andrews could perform. *Id.* at 23.

In sum, the ALJ concluded that Andrews was not disabled from December 6, 2017, through the date of his decision on December 6, 2019. *Id.* at 23–24. Thus, he denied Andrews's claim for disability insurance benefits. *Id.* at 24.

**V. Discussion.**

Andrews claims that the ALJ erred in his treatment of the medical opinions. He contends that in relation to the medical opinions, the ALJ "exclusively relied on the opinion of the medical expert, Dr. Todd, who admitted that he did not have the benefit of medical records which would otherwise be necessary to formulate an appropriate opinion." *Doc. 19* at 3. To support this claim, Andrews also contends that the ALJ erroneously found the opinions of Dr. Ming and Dr. Kneifati not persuasive. *Id.* at 8–10, 15.

Our discussion of Andrews's claim proceeds in three steps. First, we set forth the legal standard the ALJ must follow in his treatment of medical opinions. Then, we summarize the opinion of Dr. Todd and the ALJ's treatment of that opinion and we conclude that the ALJ did not sufficiently articulate his reasons for finding that Dr. Todd's opinion was persuasive. Finally, we set forth the ALJ's evaluation of Dr. Ming's and Dr. Kneifati's opinions, and we conclude that the ALJ's decision is not supported by substantial evidence.

### A.  The ALJ's treatment of medical opinions.

Given that Andrews's argument rests on the ALJ's treatment of the medical opinions, we set forth the regulatory framework that the ALJ must follow in evaluating such opinions.

The regulations regarding how the Commissioner considers opinion evidence are different for claims filed before March 27, 2017, on the one hand, and for claims, like Andrews's, filed on or after March 27, 2017, on the other hand. Under the regulations for claims filed before March 27, 2017, the Commissioner assigned weight to medical opinions, but under the regulations for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b).

And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship,

and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c).  The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).  As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id.*  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3).

"Surveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). "Although an ALJ is entitled to resolve conflicts in the evidence and determine the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity." *Phillips v. Berryhill*, No. CV 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. May 22, 2017). And "'Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor' because 'lay intuitions about medical phenomena are often wrong.'" *Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *15 (M.D. Pa. May 11, 2015) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Because Andrews's primary contention is that the ALJ erred in his treatment of Dr. Todd's opinion, we will discuss Dr. Todd's opinion in some detail.

### 1. Dr. Todd's opinion.

Dr. Todd, a medical expert who reviewed Andrews's medical records, testified at the October 3, 2019 hearing. It should be noted that Dr. Todd was

called to testify *after* Andrews, so he did not have the benefit of hearing all of Andrews's testimony. *Admin. Tr.* at 48.  Dr. Todd opined that Andrews could perform light work, "easily" carry up to 10 pounds frequently and 20 pounds occasionally, and walk and/or stand six out of eight hours per day. *Id.* at 53.  The ALJ found this opinion persuasive because "Dr. Todd had the benefit of reviewing the *entire* record, including hearing testimony, and his opinion is consistent with and supported by conservative treatment notes, imagining, consultative examination findings, evidence of improvement," and Andrews's daily activities. *Id.* at 22 (emphasis added).

But the ALJ's characterization of Dr. Todd's review is factually inaccurate because Dr. Todd did not review the entire record.  At the time of Dr. Todd's testimony, the record did not include the treatment notes for Andrews's pain management or the notes regarding Andrews's spinal injections for his back pain. *Id.* at 49–51.  Dr. Todd asked to see those notes: "Could we see those notes . . . because it's very incomplete to understand what's going on." *Id.* at 50.  And he testified that if he had those records, they would have potentially changed his opinion. *Id.* at 58.  Dr. Todd also stated that he was "unable to testify whether the [spinal injection] treatments were effective or not" because there were no notes regarding those in the record. *Id.* at 51.  Dr. Todd stated:

> [T]he usual plan of care is you do a radiofrequency ablation, even if
> you get two or three days of pain, you then go onto the

> radiofrequency.  I don't see any documentation of how that was done
> or when that was done and that would be very important for me, as a
> doctor, to testify the response of the epidural shots and whether
> radiofrequency ablation was then considered and followed up.  I can't
> tell.  There's nothing with that information.

*Id.*

On October 22, 2019, Andrews submitted the medical records that Dr. Todd

requested and asked that the ALJ admit them into the record. *Id.* at 315–17.  The

ALJ apparently did admit them, because he included those medical records in his

list of exhibits attached to his decision. *Id.* at 28 (listing exhibits 18F and 19F).

The records from Parkway Neuroscience include 78 pages of documents that span

from August 2, 2007, through June 6, 2013. *Id.* at 686–763.  And the records from

Keystone Physical Therapy span from October 7, 2015, through October 19, 2015.

*Id.* at 764–70.  There is no indication, however, that Dr. Todd had the benefit of

reviewing those records, and the ALJ did not mention them in his report. *Id.* at 15–

24.  Although we cannot determine whether these records would have changed Dr.

Todd's opinion, it is clear that he did not have the full breadth of Andrews's

medical records when he provided his testimony.  Moreover, we cannot conclude

that the ALJ's failure to elaborate on the treatment notes was harmless error, as Dr.

Todd himself testified that his opinion may have changed if he had the additional

records. *Id.* at 58.  Despite the center of Andrews's argument being that Dr. Todd

did not review the entire record, nowhere in her brief does the Commissioner address this argument. *See doc. 22*.

Further, in assessing any medical opinion and setting the RFC, the ALJ must clearly articulate his or her reasoning.  In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05).  Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

Here, the ALJ tersely addressed both the supportability and consistency of Dr. Todd's opinion.  After setting forth Dr. Todd's findings, the ALJ in one sentence explains: "[Dr. Todd's] opinion is persuasive, as [he] had the benefit of

20

reviewing the entire record, including hearing testimony, and his opinion is

consistent with and supported by conservative treatment notes, imaging,

consultative examination findings, evidence of improvement, and the claimant's

report of numerous activities of daily living." *Admin. Tr.* at 22.  The ALJ does not

cite to any exhibits in support of this contention.  And, as set forth above, the

ALJ's assertion that Dr. Todd had the benefit of reviewing the entire record is

factually inaccurate.

In sum, the ALJ's rationale for finding Dr. Todd's opinion to be persuasive

is too opaque to permit meaningful judicial review.

Because the ALJ's failed to sufficiently articulate his reasons for finding that

Dr. Todd's opinion is persuasive, we conclude that the ALJ's decision is not

supported by substantial evidence.  Although the ALJ's treatment of Dr. Todd's

opinion is sufficient for this case to be vacated and remanded, we will briefly

discuss the ALJ's evaluation of the opinions of Dr. Kneifati and Dr. Ming given

that the ALJ's evaluation of these opinions rests in part on Dr. Todd's opinion.[7]

---

[7] Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's handling of the opinions of Dr. Todd, Dr. Kneifati, and Dr. Ming, we will not address Andrews's remaining claims of error.  "Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020).  "A remand may produce different results on these claims, making discussion of them moot." *Id.*

### 2. Dr. Kneifati's opinion.

Andrews also suggests that the ALJ failed to properly consider the opinion

of Dr. Kneifati.  The ALJ summarized Dr. Kneifati's opinion that Andrews:

> [C]ould perform light work, required a cane to ambulate, and could
> ambulate 10 steps without a cane, and could use his free hand to carry
> small objects.  He further opined he could occasionally perform
> postural activities aside from never climbing ladders, ropes, or
> scaffolds, frequently operate foot controls with the right foot and
> occasionally operate foot controls with the left foot.  He could
> occasionally be exposed to moving mechanical parts, humidity and
> wetness, and temperature extremes, occasionally operate a motor
> vehicle, and never work around unprotected heights.

*Id.* at 21.

The ALJ found Dr. Kneifati's opinion "not fully persuasive." *Id.*  He noted

that Dr. Kneifati's opinion is consistent with Andrews's "antalgic gait, cane use,

positive straight leg raise, and hypoesthesia," but it is inconsistent with Andrews's

"full strength, normal lumbar x-ray, and ability to rise from a chair, walk without a

cane, and change and get on and off the exam table independently." *Id.*  And he

noted that the opinion was not consistent with Dr. Kneifati's own report that

Andrews "could shop, ambulate a block, climb steps, and prepare a simple meal."

*Id.* (citations to the record omitted).  The ALJ also stated that Dr. Kneifati's

opinion was "not supported by [Dr. Todd's] opinion." *Id.*

The issue with the ALJ's treatment of Dr. Kneifati's opinion is that he found

it to be not persuasive partly because it was not supported by Dr. Todd's opinion.

22

If Dr. Todd had the benefit of reviewing the entire record and developed a comprehensive opinion, the ALJ's rationale may have been sufficient. But because, as it stands, it is unclear whether Dr. Todd's opinion would have changed if he had the entire record, the ALJ erred in finding Dr. Kneifati's opinion unpersuasive by relying on Dr. Todd's opinion.

### 3. Dr. Ming's opinion.

Andrews also suggests that the ALJ failed to properly consider the opinion of Dr. Ming. The ALJ summarized Dr. Ming's opinion that:

> [Andrews] could perform light work, stand and/or walk 2 to 4 hours, sit less than 2 hours, and alternate sitting and standing and lie down at unpredictable intervals. Further, he opined that the claimant was capable of no work, could never climb or balance, occasionally knee [sic] crawl, bend, and twist, frequently stoop, occasionally reach in all directions, and would be absent more than 3 times a month.

*Id.* The ALJ found Dr. Ming's opinion unpersuasive. *Id.*

The ALJ addressed both the supportability and consistency of Dr. Ming's opinion. As to consistency, the ALJ noted that the opinion was inconsistent with the record because Dr. Ming only examined Andrews once. *Id.* at 21. As to supportability, after setting forth Dr. Ming's findings, the ALJ found his opinion to be "not supported by more recent treatment notes, which show normal gait and that [Andrews] denied weakness or back pain." *Id.* He also concluded that the opinion was not supported by the consultative examination findings, which showed "full

strength, normal lumbar x-ray, and ability to rise from a chair, walk without a cane, and change and get on and off the exam table independently[.]" *Id.* at 21–22.  The ALJ also concluded that Dr. Ming's opinion was not supported by Dr. Todd's opinion. *Id.* at 22.

Although the ALJ addressed both the supportability and consistency of Dr. Ming's opinion, this does not change the fact that the ALJ erred in his treatment of Dr. Todd's medical opinion, and in concluding that Dr. Ming's opinion was not persuasive, he relied in part on Dr. Todd's opinion.  And we do not know whether, if the ALJ had not erred as to Dr. Todd's opinion, his treatment of Dr. Ming's opinion would have been different.  In sum, for the reasons set forth above, the ALJ's decision is not support by substantial evidence.

## VI.  Conclusion.

For the foregoing reasons, the decision of the Commissioner will be vacated, judgment will be entered in favor of Andrews, and the case will be remanded to the Commissioner for further proceedings.  An appropriate order follows.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge